## DUDLEY v. STATE.
### No. 5954.

Court of Civil Appeals of Texas. Amarillo.
Feb. 14, 1949.

Rehearing Denied March 14, 1949.

Cooper & Finney, of Amarillo, for appellant.

H. H. Smith, Co. Atty., of Panhandle, for appellee.

STOKES, Justice.

On October 27, 1948, Clarence C. Williams, sheriff of Carson County, filed in the county court, sitting as a juvenile court, an information charging the appellant, Grover Martin Dudley, Jr., with being a delinquent child, alleging that he was a male child sixteen years of age. The complaint alleged that the appellant had vio-

lated the penal laws of the state of the grade of felony, namely, that of burglary and theft; that appellant was a resident of Amarillo in Potter County; that his father was G. M. Dudley and his mother was Dessie Dudley. On the next day, October 28, 1948, the case was called for trial and, after a hearing before the court, without a jury, judgment was entered that the appellant be declared a delinquent child and committed to the Gatesville State School for Boys at Gatesville for an indeterminate period of time not to extend beyond the time appellant should reach the age of twenty-one years and subject to modification or revocation from time to time. The judgment stated that appellant was sixteen years of age and that he was born July 4, 1932. A commitment was immediately issued by the court directing the sheriff or probation officer to deliver appellant into the custody of the Gatesville State School for Boys. The commitment was executed and appellant was delivered to the authorities at the Gatesville institution on the 29th of October, 1948. On that day, through his attorney, appellant filed a motion for a new trial which was overruled and appellant thereupon gave notice of appeal which was duly perfected and the case is now before us for review.

Three assignments of error are presented in which appellant contends the court erred in ordering him committed to the training school, first, because there was no evidence submitted at the trial upon the question of whether his parents were proper persons to have his care, custody and control; secondly, because the court did not ascertain whether or not the home of some other person or persons was suitable and available for the custody of appellant, in the event the home of his parents was not suitable; thirdly, the court erred in proceeding with the trial of appellant without first advising him of his right to be represented by counsel.

Under the first and second contentions appellant asserts that the juvenile delinquency act, Article 2338—1, Vernon's Annotated Civil Statutes, expresses a preference that a child adjudged to be a delinquent child be placed in the care, custody and control of its parents and that the court erred in failing to ascertain whether the home of appellant's parents was a fit and proper place and the parents were fit and proper persons to have his custody. We find nothing in the statute which requires the custody of delinquent children to be placed with their parents if they are fit and proper persons to have such custody. If that were the law, no child of exemplary parents, with a good home, could ever be placed in the Gatesville State School for Boys or in any place other than the home of its parents. The provision of the statute is that, when the juvenile is found to be a delinquent child, the court may, by order duly entered, proceed (1) to place him on probation in his own home or place him in the custody of a relative or other fit person, (2) commit him to a suitable public institution or agency or (3) make such further disposition as the court may deem to be for the best interest of the child. This does not mean that the court must first eliminate the question of whether or not the parents are suitable persons to have the child's custody before the second alternative may be considered nor that the second alternative must be eliminated before the court can consider the third alternative. It simply places upon the court the duty of exercising its sound discretion and make such provision for the custody of the juvenile as will serve the child's welfare and the best interest of the State. In concluding the question of custody, probation and supervision of the child, the court should consider the disposition and conduct of the child as reflected by the testimony and place him in one or the other of the environments designated by the statute which, in the judgment of the court, will best carry out the purpose of the law and secure for the child such care and guidance as will tend to correct any wayward tendencies that might be shown to have caused or contributed to his delinquency.

No statement of facts accompanies the record but the court filed findings of fact and conclusions of law in which it found that on the night of September 27, 1948, the appellant was involved, both as principal and accomplice, in a series of bur-

glaries and thefts committed in the counties of Potter, Carson and Hutchinson; that three of such burglaries and thefts were committed in Carson County; and that all of them were voluntarily admitted by him in an extensive written statement signed by him. It further found that the facts had been established from the evidence of the sheriff and the voluntary testimony of appellant's father and from the transcript of appellant's record compiled by the State Department of Public Safety which was corroborated by other testimony. The transcript of his record showed that he had been arrested and held for the county judge in Potter County in August, 1947; that he was again arrested in February, 1948, and released to his father; and that he was again arrested in May, 1948. His written confession revealed an orgy of misconduct consisting of burglaries and thefts throughout the entire night of September 27, 1948, in company with two other boys. They committed eight burglaries on their round from Amarillo to Panhandle, thence to Borger in Hutchinson County, Dalhart in Dallam County and back to Amarillo where they arrived about daylight and divided the loot they had taken in the various burglaries and thefts. According to the findings of the court, all this was freely and voluntarily admitted by appellant and there was no testimony offered to contradict it. The court concluded that, owing to the various acts of delinquency committed by appellant, and the further fact that he had previously been committed to his father by the juvenile authorities of Potter County on a charge of burglary and robbery, and the fact that such commitment to his father had not corrected appellant's criminal tendencies, it was for the best interest of the State that he be committed to the Gatesville State School for Boys for an indeterminate period of time not to extend beyond the time he should reach twenty-one years of age and subject to modification or revocation from time to time.

■ As far as the record shows, appellant's parents are exemplary people and good citizens. Moreover, there is nothing to indicate that their home is not a suitable home for any boy or girl, but that is not the test. Appellant became delinquent in the first instance while he was presumably living at home with his parents and the evidence showed that, when he was first found to be delinquent on February 5, 1948, he was released to his father. The court found that, on that occasion, he robbed a man in a hotel in Amarillo and took from him more than $100. Within a few months thereafter, and while still living with his parents and in their home, he deliberately engaged in the series of burglaries and thefts which we have detailed. It would seem futile, therefore, again to commit him to the custody of his parents or place him in any other private home with the expectation or hope that his parents or others might be able to correct his criminal tendencies. They had become progressively more vicious as he grew older and, in our opinion, no error or abuse of discretion was committed by the court in selecting the Gatesville State School for Boys as the institution which should have his custody.

■ Appellant next contends the court erred in proceeding with his trial without first advising him of his right to be represented by counsel. The judgment and also the findings of fact entered by the court state that the father and mother were personally notified of the setting of the case; that they both voluntarily appeared; and that the father, mother and appellant all announced ready for trial. It states further that no request was made by any of them that appellant be represented by an attorney but that they willingly went to trial without being so represented. Appellant does not claim that he was denied any right in respect to procedure, nor that any testimony was introduced that was not admissible. No claim is asserted that, if he had been represented by counsel, the evidence would have been different or additional evidence would have been produced. The principal evidence was the voluntary admission and statement of the details of the various infractions committed by appellant. These, as shown by the findings of fact, were corroborated by other testimony. It is not shown that either appellant or his parents were ignorant of his

right to be represented by counsel. If appellant or his parents had requested that they be permitted to procure an attorney to represent them and such request had been denied, a different case would be presented. We know of no rule that requires a court formally to inform a juvenile and his parents that he is entitled to be represented by counsel, especially under circumstances such as those revealed in this case.

We have carefully examined the record and considered all of the contentions presented by appellant and find no reversible error revealed by any of them. The judgment of the court below will therefore be affirmed.