TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00575-CV






In the Matter of B. N.






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. J-17,448, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING 







 The Travis County district court, sitting as a juvenile court, found that appellant
B.N. had engaged in delinquent conduct and committed him to the Texas Youth Commission
(TYC) for an indeterminate period of time, not to exceed his attaining twenty-one years of age. 
Tex. Fam. Code Ann. § 54.04(i) (West 1996) (Juvenile Justice Code). We will affirm the trial-court order.


Background



 B.N., fifteen years old at the time of the adjudication, lived with his mother and
older sister. His mother was unemployed and received disability payments. She had attempted
suicide and had a criminal record for welfare fraud and moving vehicle violations. B.N.'s father
and mother were never married. His father resides in Austin and he and B.N. occasionally visit.

 By the time of this proceeding, B.N. had had seventeen prior referrals to the
juvenile system, dating back to August 1996. All of these prior referrals were adjusted,
dismissed, or otherwise handled without adjudication, except an offense of evading arrest for
which he was placed on probation for six months in March 1998. B.N. was a gang member,
associating with individuals having a history with the Travis County Juvenile Court, and was a
substance abuser. He had been unfavorably discharged twice from the "Southwest Key" day
reporting program. (1) B.N. was removed from school in the ninth grade in April 1998 for truancy
and assigned to an alternative learning center.

 For the next several months during 1998, B.N. had several encounters with the
juvenile justice system. In April, he was detained for failing to attend the alternative learning
center. A warrant was issued on July 8 for failing to follow probation rules. On July 14, he was
detained for the offenses leading to this adjudication. On July 21, the State filed an original
petition alleging delinquent conduct, specifically: criminal mischief, theft, unauthorized use of
a motor vehicle and two counts of escape. Tex. Penal Code Ann. §§ 28.03, 31.03, 31.07, 38.06
(West 1994 & Supp. 1999). A second order of detention was issued July 22. B.N. was released
approximately two weeks later. On August 3, he was again detained for probation violations. On
August 7, the State filed an amended petition adding a count of burglary. During the August 19 
adjudication, B.N. pleaded true to the allegation of the unauthorized use of a motor vehicle. The
state waived the theft allegation and one of the escape allegations. The court heard evidence on
the criminal mischief allegation and found it to be true as well.

 The court held a disposition hearing on August 26, 1998. The court placed B.N.
on intensive supervision probation (ISP) in the custody of his mother for one year. The court set
a further hearing for September 23 to determine if the Southwest Key day reporting program
should be added to his probation terms and to determine whether restitution was appropriate.

 On September 8, 1998, B.N. was detained for violating terms of probation by
violating his curfew and by re-offending. On September 14, the court vacated its disposition order
of August 26. On September 21, the court held a second disposition hearing. B.N. appeared with
his parents and his attorney. B.N.'s probation officer testified concerning B.N.'s arrest for
burglary of a motor vehicle. He had been detained after B.N.'s curfew, a term of his probation. 
The probation officer testified to B.N.'s poor behavior while in detention, including an escape
attempt. The probation officer testified that the administrative director of the Austin Recovery
Center reported to him that B.N. had done a preliminary intake but failed to report the next day
as scheduled. At the end of the hearing, the court committed B.N. to the TYC for an
indeterminate sentence.

 On appeal, B.N. raises three issues: (1) the evidence does not support the trial
court's decision to commit him to the TYC; (2) the evidence is insufficient to show that reasonable
efforts had been made to prevent or eliminate the need to remove B.N. from home; (3) the trial
court denied B.N.'s due process rights by its modification procedure. We will begin with the third
issue because B.N. essentially challenges the power of the trial court to render its final
dispositional order.

Due Process


 B.N. contends that the trial court followed improper procedures in rendering its 
September 21 order. He complains that no motion to modify disposition had been filed. 
Therefore, he could not have received proper notice of the hearing on the modification of his
disposition: "[T]he only indication in the record regarding the mechanism for bringing the child
back before the court is a notation on the handwritten civil docket sheet and a statement by the
juvenile court referee at the September 21, 1998 disposition hearing that the disposition order had
been vacated on September 14, 1998." B.N. states that as there is no record of the proceedings
of September 14, the content of the court's notice to B.N. regarding modification is unknown. (2)

 B.N. misunderstands the nature of the proceedings. The August 26th order already
had scheduled a hearing to make final the terms of B.N.'s probation. In the interim, B.N.
committed another offense and also violated his probation by committing an offense after his
curfew. Even if the August 26th order were a final one, the trial court, while retaining plenary
power, reconsidered its original disposition and ordered a new disposition. This was not a
modification proceeding. (3) Further, the order placing B.N. on probation warns that violation of
the terms of probation can result in detention and further proceedings. 

 To the degree that B.N. complains about notice, the record reflects that B.N., along
with his parents and counsel, appeared at the September 21 disposition hearing. When a child's
attorney appears, does not file a motion for continuance, and the child and parents are present and
fully advised by the court as to the issues before the court, reasonable notice is presumed. See In
re D.E.P., 512 S.W.2d 789, 791 (Tex. Civ. App.--Houston [14th Dist.] 1974, no writ). B.N.
has not demonstrated a lack of proper notice.

 The trial court acted within its power when it rendered its final order of disposition. 
B.N. had notice adequate to satisfy any due process concerns. We overrule issue three.


Evidence to Support Commitment to TYC



 In issue one, B.N. complains that the evidence does not support the trial court's
decision to commit B.N. to the TYC. We disagree.

 A juvenile judge has broad discretion to determine a suitable disposition for a child
adjudicated as having engaged in delinquent conduct. See In re J.R., 907 S.W.2d 107, 110 (Tex.
App.--Austin 1995, no writ). Absent an abuse of discretion, a juvenile court's dispositional
findings should not be disturbed. See In re L.G., 728 S.W.2d 939, 944-45 (Tex. App.--Austin
1987, writ ref'd n.r.e.). The test for abuse of discretion is whether the court acted reasonably,
that is, with reference to guiding rules and principles. See In re T.A.F., 977 S.W.2d 386, 387
(Tex. App.--San Antonio 1998, no pet.)

 To commit a child to the TYC, the court must find that the child is in need of
rehabilitation or that the protection of the child or the public requires that a disposition be made. 
Juvenile Justice Code § 54.04(c). To commit a child to TYC, the court determines that it is in the
child's best interests to be placed outside the child's home, that reasonable efforts were made to
retain the child in his or her home, and that the child in the home cannot be provided the level of
support and supervision necessary to maintain the child there. Id. § 54.04(i). Having adjudicated
B.N. to have engaged in delinquent conduct, the court found he needed rehabilitation and the
protection of the public required that a disposition be made. After determining the necessary
factors under section 54.04(i) were met, the court went on to find that B.N. would not accept
parental supervision, had demonstrated a disregard for authority, and that local resources were not
adequate either to meet B.N.'s needs or to protect the public.

 The record supports the court's exercise of its discretion. Within the two-year
period before this adjudication, B.N. had seventeen juvenile referrals, most of which were
attempts by the probation department to work with B.N. outside of court. He was on probation
when he committed the offenses that resulted in this adjudication. As soon as he was placed on
ISP and released from detention, he broke curfew, violating one term of his probation and re-offended, breaking another term. He tried to escape from the subsequent detention. He was a
gang member and substance abuser who failed to perform court-ordered community service and
attend court-ordered programs. During his first probation he left his mother's residence for
several weeks without permission or accounting for his whereabouts.

 B.N.'s probation officer concluded that B.N. "will choose to behave as he pleases,"
"leaves the house at his own discretion," and "disregard[s] directions from his mother." B.N.'s
behavior demonstrated that probation as an alternative had failed. In essence, whenever he was
released from detention, he re-offended. The court did not abuse its discretion in concluding that
the highly structured environment of TYC offered the better alternative for B.N.'s rehabilitation
and the protection of the public. We overrule issue one.


Efforts to Retain in Home



 In issue two, B.N. complains that the evidence was insufficient to show that
reasonable efforts had been made to prevent or eliminate the need to remove him from the home. 
The gravamen of his complaint is that, although remaining with his mother might have been
unworkable, inadequate efforts were made to explore the possibility of placement with his father. 
B.N.'s appellate complaint is based on a comment by his trial counsel that he thought that B.N.'s
father would give B.N. a chance on probation at his house.

 We note that B.N.'s father, David Meredith, was present at the last disposition
hearing and offered no testimony about such an offer. Meredith and B.N.'s mother were never
married. There is no evidence that Meredith ever took formal steps to declare his paternity and
pay child support. There is no evidence that Meredith had ever attempted to gain custody, or ever
requested that any evaluation of his home be made to determine suitability for placement of B.N. 
There is no evidence of any relationship between B.N. and Meredith other than occasional casual
visits. In short, B.N. complains that the juvenile court did not explore the possibility of placing
him in a new home.

 The juvenile court need not investigate every possible alternative to TYC
commitment. See Echols v. State, 481 S.W.2d 160, 161-62 (Tex. Civ. App.--Houston [14th
Dist.] 1972, no writ). The idea of placing B.N. with Meredith was a passing remark by B.N.'s
trial counsel. There is no evidence in the record that would have necessitated the trial court
exploring placement with Meredith. We overrule issue two.


Conclusion



 We have concluded that the trial court properly rendered its dispositional order of
September 21, 1998 and that the court did not abuse its discretion in committing B.N. to the TYC. 
Accordingly, having overruled all of B.N.'s issues presented, we affirm the trial-court order.



 

 Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Affirmed

Filed: August 26, 1999

Do Not Publish
1. The record does not describe this program. We presume it is a part of Travis County's
juvenile probation system.
2. However, it is B.N.'s burden to request a record sufficient to show error. See Kent v. State,
982 S.W.2d 639, 641 (Tex. App.--Amarillo 1998, pet ref'd untimely filed).
3. Under section 54.05 of the Juvenile Justice Code, any disposition other than commitment
to the TYC may be modified until the child reaches the age of eighteen or the child is discharged
from the disposition. A motion to modify may be brought by various parties, including the court
itself. See Juvenile Justice Code § 54.05(d).



After determining the necessary
factors under section 54.04(i) were met, the court went on to find that B.N. would not accept
parental supervision, had demonstrated a disregard for authority, and that local resources were not
adequate either to meet B.N.'s needs or to protect the public.

 The record supports the court's exercise of its discretion. Within the two-year
period